REINETTE LONG HUNT, *Appellant,* v. CHARLES EDWIN HUNT, *Appellee.*

1.  A husband without the wife's consent has the right to establish the family domicile and it is her duty to live with him at his domicile if it is reasonably possible for her to do so. But if a husband by his own acts intentionally brings the cohabitation to an end, and by his own acts keeps it at an end for the statutory period, showing no evidence of a reasonable purpose to renew his marital relations, he is guilty of desertion and she is entitled to a divorce on that ground.

2.  A husband has no right to make it a condition of reconciliation with his wife, and of renewed marital relations that she shall convey to him her separate property. An offer of reconciliation must be made in good faith, and free from improper qualifications and conditions.

This case was decided by the court En Banc.

Appealed from the Circuit Court for Leon County.

The facts in the case are stated in the opinion of the court.

*Francis B. Winthrop,* for Appellant;

No appearance for Appellee.

PER CURIAM.—In March, 1910, the appellant filed a bill in the Circuit Court of Leon County against the appellee seeking a divorce. The following are the allegations of the bill:

"Reinette Long Hunt of the City of Tallahassee, county of Leon and State of Florida, brings this her bill against Charles Edwin Hunt of the City of New York, County of New York and State of New York.

And thereupon your oratrix complains and says:—

1. That complainant has resided in the County of Leon and State of Florida for more than two years next preceding the filing of this bill.

2. That complainant and the defendant were lawfully married in the City of Tallahassee, in the County of Leon and State of Florida on the 29th day of December, A. D. 1897, and thereafter lived together as man and wife until February, A. D. 1907, when defendant left the complainant and has never since returned.

3. That soon after the marriage between complainant and the said defendant Charles Edwin Hunt, the defendant began and continued to indulge, up to the time when he left complainant, in violent and ungovernable temper towards complainant at various places and times. That such indulgence in such violent and ungovernable temper on the part of the defendant towards complainant, was constant and recurring and that by reason thereof complainant was injured in health until she became a nervous wreck, and was put in fear lest she suffer some serious bodily injury.

4. That immediately after the marriage between complainant and the defendant, they moved to New York State, where they made their home until the year 1907, at which time during a visit to Tallahassee, Florida, the said defendant left your orator, as hereinafter alleged, and complainant has made her home in said city of Tallahassee, and State of Florida ever since.

5. That from the year A. D. 1898, up to the time when the defendant left complainant in the year A. D. 1907, he habitually indulged in violent and ungovernable temper towards complainant, abusing her and her family and friends until complainant became a nervous wreck and

was ill most of the time by reason of such exhibitions of temper towards her on the part of the said defendant.

6. That in the City of New York in the early spring about April, A. D. 1900, in an apartment on 142d street, where the defendant and complainant were then living, the defendant became violently angry with complainant because her brother who was working in defendant's office and living with them at the time, remained away from the office for the day on account of illness, and though the said defendant had given his permission for him to remain at home, upon his return from work and finding complainant and her brother together, he followed her to her room and began to abuse her and her brother and became so violent in his language that when complainant went to him and tried to quiet him by putting her arms around him, he pushed her to the floor and continued to abuse her until she becoming frightened and fearing lest he do her some bodily injury called to her brother who came in the room, at which the defendant desisted from his abuse.

7. That in Yonkers, New York, in the latter part of December, A. D. 1901, in their home which they had rented the defendant became violently angry with complainant for no cause whatsoever and used such harsh and cruel language that she fled to her room to escape, that the said defendant not being satisfied followed her and finding the door closed broke it in and continued to abuse complainant until she became hysterical, and then and not until then did he desist.

8. That again in Yonkers, New York, in the spring of 1902, the defendant became violently angry with complainant without cause or reason being given him, and after abusing her until she fled to her room to escape his harsh and cruel language, followed her and finding

the door locked broke it open and continued to abuse her until complainant broke down in tears.

9. That about the middle of January, A. D. 1904, while defendant and complainant were visiting complainant's mother in Florida, the defendant on a certain occasion took exception to a shirtwaist which complainant was wearing, although same was perfectly modest and proper and upon her refusing to leave her painting upon which she was at the time working to change the said shirtwaist, defendant became violently angry with her and seizing the picture which complainant was painting tore it into half and threw it in the fire from which complainant rescued it.

10. That in Yonkers, New York, during the month of March, A. D. 1904, after complainant's health had been impaired by defendant's continued exhibitions of temper and while she was weak and ill, the defendant became violently angry with her one night and abused complainant and her family and friends until she being able to bear it no longer was forced to leave her room in her night dress, that the defendant followed her and hearing him coming she went out of the back door of the house and remained on the back porch until the defendant found her and dragged her back into the house, severely hurting her arm in so doing.

11. That again during the month of February, A. D. 1905, in Yonkers, New York, the said defendant without cause or provocation became violently angry with complainant and became so abusive and cruel in his language that complainant became frightened and ran out of the house in her night dress upon the snow covered ground and remained there until the defendant becoming calmer called her back into the house.

12. That in July, A. D. 1905, upon the return of com-

plainant from a yachting trip upon which she had gone with the consent of the defendant, he became violently angry with her when she returned home and told her that he wished that she had not come home at all, though complainant had been absent only a week, and had returned home immediately upon the completion of the cruise.

13.   That in August, A. D. 1906, complainant came to Tallahassee, Florida, with the consent of the defendant, for a visit of two months to her mother for the purpose of helping her in the care of complainant's invalid father and grandmother, the defendant agreeing to join her in Tallahassee during the month of October.   That for some time previous to her departure the said defendant had been trying to persuade complainant to put all of her separate property in his name which she had steadily but firmly and kindly refused to do and upon several occasions when she so refused defendant became violently angry with her.   That in the month of October, A. D. 1906, when the said defendant arrived in Tallahassee he immediately began to discuss the subject of the property and upon complainant refusing again and again to put the property in his name he became violently angry with her and abused her for her lack of confidence in him.

14.   That in December, A. D. 1906, at complainant's home in Tallahassee, Florida, which was her separate property, she noticed the defendant changing the grounds which held childhood associations for her, and upon her requesting him to leave them as they were he became angry with her and ordered her into the house in a harsh and cruel manner.

15.   That again during the month of December, A. D. 1906, in Leon County, Florida, at the house of complainant where she and the defendant were living with some

friends, the defendant became violently angry with complainant and locking himself in the room which they occupied he refused to allow her to enter, so that she was forced to sleep for three nights on the couch in the parlor of the house.

16.  That on the 29th day of December, A. D. 1906, defendant left complainant in Leon County, Florida, and returned to New York.  That about the middle of February, A. D. 1907, defendant returned to Florida, arriving about midnight, and immediately upon his arrival came to the house of complainant where she was at the time staying and began to urge her to transfer her separate property to him which she refused to do.  That upon the second night after the arrival of defendant he and the complainant left her mother's house where they had been dining and returned to their home on complainant's property.  That as soon as they reached their room the defendand locked the door and complainant believing that he would insist upon her executing the deeds to her separate property about which they had been talking and which were in the room, and fearing that if she did not do so she might suffer some serious bodily injury, fled from the room by another door and succeeded in getting through, although the defendant shut the door upon her as she was going through, and hurt her severely.  That complainant upon leaving the room went to her mother's house where the said defendant followed her shortly afterwards and after abusing her and her mother left the house and took the early morning train for New York City.

17.  That soon after the departure of the defendant, complainant received a telegram from him asking her to come to him and almost immediately thereafter received a letter stating that she could return to the defendant only upon the condition of her transferring to him

all of her separate property. That complainant was ready and willing to return to defendant and live with him as his wife and wrote him three letters to that effect, but stating in the said letters that she was not willing to transfer her separate property to him. That the said defendant returned all of the said letters unopened with the exception of one which complainant directed in type-writing, which he opened and returned to her.

18. That since February, A. D. 1907, when the said defendant left complainant in Leon County, Florida, she has never seen her said husband, the defendant, except upon one occasion in New York City when he refused to speak to her, that the defendant has remained away from her continually, refusing to answer her letters offering to come to him as his wife should and has not contributed to her support in any way whatsoever, nor has he furnished her with the necessities of life, so that complainant has had to earn her own living and support herself.

19. That during their married life complainant always performed her marital duties towards the defendant as a dutiful and faithful wife should, and ever tried by kind ness to induce the defendant to desist from his indulgence in such violent and ungovernable temper, but that all such efforts on her part were, on account of such incompatibility of temper without success.

20. That the said defendant Charles Edwin Hunt is guilty under the laws of the State of Florida of habitual indulgence in violent and ungovernable temper.

21. That the said defendant Charles Edwin Hunt is guilty under the laws of Florida of wilful, obstinate and continued desertion of the complainant for one year.

22. That as to the defendant Charles Edwin Hunt, the complainant believes that he is a resident of the State of

New York, one of the United States of America, and that he is not a resident of the State of Florida, and that complainant believes that the present place of residence of the said defendant is in the City of New York, and County and State of New York, and that his business address is 140 Front Street, care of Allerton D. Hitch and Company. That complainant is not able to state more specifically than above the place of residence of the said defendant as the street upon which and the number of the house in which the said defendant resides is unknown to her. But that the above specifies as particularly as is known to complainant the place of residence of the said defendant.

To the end therefore, that the defendant Charles Edwin Hunt, may full, true and perfect answer make to and singular the matters stated herein, and may if he can, show cause why complainant should not have the relief herein and humbly prayed for.

May it please your Honor, to grant unto complainant a decree of this Court, divorcing her from the said Charles Edwin Hunt, "a vinculo matrimonii;" and that complainant may have such other and further relief as to your Honor shall seem meet.

May it please your Honor, to grant unto complainant a writ of subpœna, directed to the said defendant, Charles Edwin Hunt, thereby commanding him at a certain time and under a certain penalty personally to appear before this Honorable Court, and then and there full, true, perfect and direct answer make to all and singular the premises, and to stand to, abide and perform, such further order, direction and decree therein as to this Honorable Court shall seem meet.

Francis B. Winthrop,<br>Solicitor for Complainant."

There was an order of publication of notice, and publication made in accordance with the statute. The defendant did not appear or answer the bill, and a decree *pro confesso* was properly entered against him. A special master in chancery was appointed and the evidence offered by the complainant was taken and reported to the court. The defendant offered no testimony. Upon final hearing the Circuit Judge made a decree holding that the allegations of the bill as to the habitual indulgence of a violent and ungovernable temper towards the complainant, and the allegations as to the desertion of the complainant, and the evidence in support thereof were insufficient to entitle the complainant to a decree of divorce, and dismissing the bill at complainant's costs. An appeal was taken from this decree.

Each and every allegation of the bill is supported by the testimony of one or more witnesses, including the testimony of the complainant. We can discover nothing in the testimony which detracts from its probative force. The testimony of the complainant is corroborated in many particulars by that of other witnesses, and there is no conflict between the witnesses. 14 Cyc. 689. The two grounds for divorce alleged in the bill are, first, "the habitual indulgence by defendant in violent and ungovernable temper," and, second, wilful, obstinate and continued desertion of complainant by the defendant for one year. (See section 1928, General Statutes of 1906.)

The complainant owned a house in the City of Tallahassee which is her separate property and which she and the defendant were in the habit of visiting from time to time—his place of residence being New York City. Complainants' parents also lived in the City of Tallahassee. Complainant and defendant were married in Tallahassee on the 29th of December, A. D. 1897, and lived together as

man and wife until February, A. D. 1907, when it is alleged the defendant left the complainant, and has never since returned. It is alleged that soon after the marriage defendant began to indulge towards complainant a violent and ungovernable temper, indulging in frequent abuse of herself and family, and using some personal illtreatment, which she alleges caused her to become a nervous wreck. In 1906 he began to demand that complainant should put her property in his name, and upon her refusal to do so he became angry and abused her. On the 29th of December, 1906, defendant left the complainant in Leon County, Florida, and returned to New York. He came back about the middle of February, A. D. 1907, arriving about midnight—went to the house of complainant and began to urge her to transfer her separate property to him, which she refused to do. On the next night the defendant locked the door of their room, and complainant fearing violence fled through another door, which defendant shut upon her as she was going through, and hurt her severely. Complainant went to her mother's house, to which defendant followed her, and after abusing her, left the house and took the early morning train for New York City. Soon after complainant received a telegram from defendant asking her to come to him, but accompanied by a letter stating she could return to the defendant only on the condition of her transferring to him all of her separate property. Complainant alleges that she was willing to return and live with the defendant as his wife, and wrote him three letters to that effect, but that she was not willing to transfer her separate prope···
to him; that two of the letters were returned to her unopened. The third was directed in typewriting, was opened and then returned. She alleges that since February, 1907, she has never seen her husband except once

in New York City, when he refused to speak to her; that he has not contributed to her support in any way whatever, and has not furnished her with the necessities of life, so that she has been obliged to earn her own living. These allegations as we have said are sustained by the testimony.

Tinney Watkins testified that he was working on the grounds at Mrs. Hunt's home in the winter of 1906 and 1907; that he was at the house on the night in February, 1907, when Mr. Hunt left last for New York; that he was nursing Mrs. Hunt's father in a room adjoining the one occupied by Mr. and Mrs. Hunt, heard loud talking shortly after Mr. and Mrs. Hunt went into it about 10 o'clock; heard Mrs. Hunt say she would not stay in there and be treated like that; that she immediately ran into the room where he and Mr. Long were, crying, and said Mr. Hunt had slammed the door on her and hurt her; he heard the door slam; he went with her to her mother's house; she was crying and frightened, and kept looking back to see if she was followed; he left Mrs. Hunt at her mother's house, went back to the house in the grove (Mrs. Hunt's); shortly after Mr. Hunt called him to go upstairs and get a big trunk; Mr. Hunt took the rug from the floor, the bed clothes from the bed, the toilet articles from the bureau, and clothes and put them in the trunk; Mrs. Hunt's clothes he threw on the floor; he was very mad and told witness he was going away and never come back any more; after he had finished packing he ordered a team and went away on the 3:30 A. M. train. This witness testified that he had no interest in the result of this suit.

Mrs. Hunt's testimony was corroborated in many particulars by Mrs. Long, her mother, by Mr. Long, her brother, and by Mary Turner, as well as the witness Tinney Watkins. It is true that the husband without the

wife's consent has the right to establish the family domicile, and that it is her duty to live with him at his domicile if it is reasonably possible for her to do so.  But if the husband by his own acts intentionally brings the cohabitation to an end, and by his own acts keeps it at an end for the statutory period, showing no evidence of a reasonable purpose to renew his marital relations, he is guilty of desertion.  He had no right whatever to make it a condition of reconciliation with her and of renewed marital relations that she should convey her property to him.  An offer of reconciliation must be made in good faith, and free from improper qualifications and conditions.  14 Cyc. 619, and cases cited in note 89.

It seems to us that the allegations and proof show that Mr. Hunt deserted his wife; that he did so intentionally, and for the statutory period, and that he has no purpose whatever of renewing his marital relations with her.

The decree appealed from is reversed, with directions to enter a decree divorcing appellant from appellee, in accordance with the prayer of the bill.

All concur except COCKRELL, J., who took no part, being disqualified.